## Newell *against* Roberts and others :

### IN ERROR.

Where the plaintiff, in an action of covenant, commenced in 1835, stated in his declaration, that the defendants, in 1818, covenanted with the plaintiff to manufacture certain materials into clocks, and make and finish them as fast as they could be made, by faithfully employing, constantly, ten workmen, until 2,000 were completed; and that as fast as such clocks should be made and completed, one half of the first 300 should be delivered to the plaintiff at the shop where they were made, in *Bristol*, in this state, and that three fourths of the remainder of such clocks should be delivered to the plaintiff as aforesaid, until the clocks so delivered to him, should amount, at 14 dollars each, to a certain sum; and the breach assigned was, that the defendants neglected and refused to perform said covenant on their part, and never delivered said clocks, or any part thereof, although they were often demanded; that the defendants manufactured the materials into clocks, and parts of clocks, and clandestinely conveyed them away out of this state into places unknown, deceitfully substituting in their place, boxes filled with stones and rubbish; and that the defendants conveyed away all their property, and secreted said materials, and defrauded the plaintiff of said clocks; without averring, that a reasonable time had elapsed for the making of the 300 clocks; or that the

defendants, having made them, neglected or refused to deliver the one half; or that the defendants neglected to employ the stipulated number of workmen; it was held, that no breach was well assigned, and that the declaration was ill on demurrer.

A NEW trial having been granted in this case, pursuant to the advice of all the judges, (*ante* 64–74.) the defendants pleaded anew. Their first plea was a denial of the truth of all the allegations in the declaration, except the execution of the indenture, and the payment, by the plaintiff, of the first instalment. There were four other special pleas. The plaintiff demurred specially to the first plea of the defendants, and replied to the others, by alleging sundry new matters. The defendants demurred specially to the second, third and fifth replications, and traversed the fourth.

At the term of the superior court, held at *Hartford*, in *January*, 1840, (*Williams*, Ch. J. presiding,) the declaration was adjudged insufficient; and judgment was, therefore, rendered for the defendants. To reverse that decision, the record was brought before this court, by motion in error.

As the judgment of the superior court turned exclusively on the sufficiency of the declaration, it seems proper to insert it here at length. It was as follows: " That at *Bristol*, on the 24th of *July*, 1818, the plaintiff of the one part, and the defendants of the other part, in and by certain articles of agreement then and there made and agreed upon, by and between said parties, under their hands and seals, well executed and delivered, one part of which said articles of agreement, sealed with the seals of the defendants, the plaintiff now brings here into court, the date whereof is the same day and year aforesaid, mutually covenanted and agreed as follows, *viz.* that the plaintiff should pay all the debts due from, and just claims against, the late firm of *Roberts, Ives & Co.,* (which firm was thereby then dissolved) and advance and pay to the defendants a further sum in money, not to exceed, including said debts and claims, 20,000 dollars; and that said money, so to be advanced and paid to the defendants, exclusive of said debts and claims, should be advanced and paid, 100 dollars at the then present time; 400 dollars thereof, in thirty days from said date; and 1000 dollars, in ninety days from the end of said thirty days; and 1000 dollars, at the end of each successive ninety days thereafter, until the

whole should amount to 20,000 dollars, including said debts and claims; that all the stock, materials, tools and implements, and every other kind of property, in any way owned by, or belonging to, the late firm of *Roberts, Ives & Co.*, should be the sole and separate property of the defendants, excepting sufficient, including the tools, for the making and manufacturing of 2000 clocks, which should be the property of the plaintiff, but should be and remain in the possession of the defendants, and be by the defendants made and manufactured into clocks, at the defendants' own expense; and as fast as said clocks should be made and completed, that one half of the first 300 thereof should be delivered to the plaintiff, at the shop where said clocks were made in said *Bristol*, and the other half thereof, should be the property of said defendants; and that three fourths of the remainder of such clocks should be delivered to the plaintiff as aforesaid, until the clocks so delivered to him, should amount to and pay him, at the price of 14 dollars for each clock, all the sums he should have paid and advanced as aforesaid in the payment of said debts, and in the advancements to the defendants, with the lawful interest thereon; that the plaintiff would in no way interfere or intermeddle with said materials and tools, provided the defendants should deliver to him clocks as aforesaid, sufficient to pay said debts, claims and advancements as aforesaid; and that when the same should have been delivered as aforesaid, all the remainder of said clocks and property should belong to the defendants, and the plaintiff should have no further demand against the defendants.

"And it was further covenanted and agreed, in and by said articles, by and between the said parties thereto, that said clocks should be eight-day, rolling pinion, brass clocks, every way well made and put in cases; the plaintiff to furnish cases, except tablets, and put in motion and to go well, to the satisfaction of good judges; and that said clocks should be made and furnished as fast and as soon as they could be made, by faithfully employing, constantly, six workmen, exclusive of the defendants and *Noble Jerome*, and those employed in making faces and pinions; that the plaintiff should have the right of putting looking-glasses in the cases of his clocks; and that the defendants should not sell any clocks to any other persons, lower than at the price of 25·dollars each, exclusive of the

value of the glass and case, until one year after the plaintiff should have received the last of his clocks as aforesaid ; and that the defendants should not authorize any other person to make and sell clocks in any other way than as aforesaid ; nor authorize the looking-glasses to be used and placed in any other description of clocks than the above-mentioned, until six months from the delivery of said clocks to the plaintiff.

" And the defendants further covenanted and agreed, in and by said articles, with the plaintiff, that they, the defendants, would, as soon as might be, by employing said workmen as aforesaid, complete 100 clocks, then 200 clocks, at two successive times, and then 300 clocks at each successive time, until the whole of said 2000 should be completed ; and that the plaintiff should be paid the whole of his said claim out of said 2000 clocks.

" And the defendants covenanted with the plaintiff, that they, the defendants, would well and truly do and perform all whatsoever was to be done and performed by them, according to the terms and true intent and meaning of said articles of agreement as aforesaid.

" Now the plaintiff says, that he well and truly kept and performed all the covenants aforesaid on his part to be kept and performed, according to the true intent and meaning thereof ; and that he, the plaintiff, well and truly paid all the said debts due from, and just claims against, the said late firm of *Roberts, Ives & Co.*, which debts and claims, so paid by him, amounted to a large sum, *viz.*          dollars, and advanced and paid to the defendants the whole sum of 20,000 dollars, including the said payment of debts and claims against said late firm of *Roberts, Ives & Co.*, according to the true intent of said articles ; and the plaintiff did advance and pay to the defendants sundry large sums, *viz.* 15,000 dollars, which the defendants accepted and received ; and the defendants, under said articles of agreement, became indebted to the plaintiff in the full sum of said 20,000 dollars, payable in clocks, according to the terms of said articles of agreement, covenant and agreement of the defendants as aforesaid.

" But the defendants, on their part, have wholly neglected and refused to keep or perform their covenants and agreements aforesaid, and wholly broken the same ; and have

wholly, at all times, refused to pay the plaintiff the said sum of 20,000 dollars, or any part thereof, or to pay, satisfy or deliver to the plaintiff the said clocks so by the defendants covenanted to be delivered to the plaintiff, nor any part thereof; although the plaintiff was at said shop, in said *Bristol*, ready to receive the same, and often there demanded the same of the defendants; and the defendants did, at said *Bristol*, immediately after the execution of said articles of agreement, manufacture said stock and materials into clocks, and parts of clocks, and clandestinely convey the same away out of this state, and to places unknown, deceitfully substituting, in their places, boxes filled with stone and rubbish, and did wholly refuse to complete and deliver to the plaintiff all, or any part of said clocks, but the defendants conveyed away all their property, and secreted all said stock and materials, and defrauded the plaintiff of said clocks and of said sum of 20,000 dollars, and wholly failed to perform and keep their said covenant and agreement." The suit was commenced *July* 30, 1835.

*Hungerford* and *Toucey*, for the plaintiff, after remarking, that the declaration standing on general demurrer, it is admitted that the defendants are indebted to the plaintiff 20,000 dollars, payable in clocks, at 14 dollars each, to be made, by the defendants, of certain specific materials, which were the property of the plaintiff, and to be delivered at the shop where they were to be made in *Bristol*, as fast as made, and to be made as fast as they could be, by employing constantly ten workmen, exclusive of the defendants and certain other persons, contended, 1. That the declaration shewed a violation of the defendants' covenant as to the making, finishing and delivery of the clocks. The defendants did not covenant to make and deliver, in a reasonable time, but to deliver " as fast and as soon as they could be made, by faithfully employing, constantly, ten workmen," &c. And it is alleged, that " the defendants have wholly neglected and refused to keep or perform their covenants," &c.; which is a direct allegation that the defendants neglected and refused to make and furnish these clocks, according to the terms of the covenant.

2. That the clandestine and fraudulent abstraction and concealment of all the plaintiff's materials, and of all the

*Hartford,*
June, 1840.
———
Newell
*v.*
Roberts.

*Hartford,*
*June, 1840.*

*Newell*
*v.*
*Roberts.*

clocks, finished and unfinished, beyond the jurisdiction of the state, and in places unknown, and the total fraudulent deprivation of the plaintiff, by the defendants, of all this property, was an allegation of a total breach, without reference to time, and independently of it. It appears from the record, that this covenant was entered into more than sixteen years before the suit was brought. *Gould's Plead.* 92. And the declaration alleges, that the defendants did, at *Bristol,* " immediately after the execution of said articles of agreement, manufacture said stock and materials into clocks, and parts of clocks, and clandestinely convey the same away out of this state into places unknown, deceitfully substituting in their place boxes filled with stones and rubbish ; and did wholly refuse to complete and deliver to the plaintiff all, or any part, of said clocks ; but the defendants conveyed away all their property, and secreted all said stock and materials, and defrauded the plaintiff of said clocks, and of said sum of 20,000 dollars, and wholly failed to perform or keep their said covenant and agreement."

In the first place, as to the finished clocks ; the defendants were to deliver the one half of them at least, at the shop, as fast as made ; and some were made. Secondly, as to all the unfinished clocks ; the defendants themselves, with ten workmen and others, were to be constantly employed upon them until finished, ready to be delivered at the shop in *Bristol;* instead of which, the defendants conveyed them away out of this state, and to places unknown, secreted them, and defrauded the plaintiff of them entirely. These acts are, not only to a common intent, but absolutely and irreconcilably, at variance with the acts covenanted to be done, by the defendants, and necessarily exclude them. Thirdly, this covenant is to have a reasonable construction in furtherance of the intent of the parties. The plaintiff's *security* for the large sums advanced by him, as designed and provided by the covenant, was the property in these materials, to be wrought into clocks. They were to be delivered at the shop where made, in *Bristol.* A removal of them out of the state, was an infraction of the covenant, and destroyed the plaintiff's security. A court of chancery would have enjoined against the act. A clandestine removal and secreting of them in places unknown, by which the plaintiff was defrauded

of them, is an act of the same character, and a like infraction of the covenant. It stands admitted, therefore, on this demurrer, that the defendants have clandestinely and fraudulently withdrawn and secreted all these materials of the plaintiff, for sixteen years, and actually defrauded the plaintiff of them entirely ; these being substantial allegations, well made on the declaration, and comprising, in form and substance, a total breach of the defendants' covenants. [The counsel proceeded to answer other objections to the declaration, which it is not necessary to state.]

*W. W. Ellsworth,* for the defendants, contended, 1. That the declaration is insufficient, because it does not shew, that the plaintiff has performed *all* that he was bound to do. By the terms of the covenant, the plaintiff was to furnish cases for the clocks ; but there is no allegation that he did furnish them, or that his neglect to furnish them was excused by the defendants. The general allegation of performance on the part of the plaintiff, precludes the idea of an excuse for non-performance. Besides, the plaintiff has not stated his *readiness* to perform the act in question ; which is necessary to make the excuse available. 1 *Chitt. Plead.* 317. The general allegation of performance alone, is not sufficient ; for performance ought to be shewn, with such certainty, that the court may judge whether the intent of the covenant has been duly fulfilled. 1 *Chitt. Plead.* 316.

2. That the declaration is insufficient, because it contains no averment of the lapse of *a reasonable time* to make and deliver the clocks, or any number of them. The *law* does not determine what is a reasonable time for this purpose ; but it must be shewn, by direct averment.

3. That the declaration is insufficient, because it contains no averment of the payment of instalments or debts, at the times they should have been paid ; nor that the defendants had *notice* of the payment of any debts ; nor *when* the plaintiff demanded clocks, or was ready to receive them : it might be the day after the indenture was signed, or seventeen years afterwards. A general demand or notice is bad, on demurrer. 1 *Chitt. Plead.* 324. *Rapelye* & al. v. *Bailey,* 3 *Conn. Rep.* 438. 443. *Com. Dig. tit.* Pleader. C. 69.

4. That the property was concealed and clandestinely

carried out of the state by the defendants, does not shew a breach of the covenant. In the first place, the defendants had never covenanted not to do so. Secondly, it was their property, for the time at least ; and they had a perfect right to keep it where and as they pleased. Thirdly, what they did might have been necessary, and for the benefit of all concerned. Fourthly, these acts, if done wrongfully, do not shew, directly and explicitly, as the plaintiff is bound to shew, either that the plaintiff did perform on his part, or that the defendants did not perform on their part. *Galtiff* v. *Bourne* & al. 4 *Bing. N. C.* 314.

5. That the replications to some of the pleas are bad, in several respects. [It is not necessary to follow the counsel on these points.]

WAITE, J. Several of the issues in this case terminated in special demurrers. It became necessary, therefore, for the court to look at the whole record, and ascertain where was the first substantial defect in the pleadings. For however defective might be the pleadings of the defendants, yet, if the plaintiff's declaration was insufficient upon a general demurrer, he could not recover. The court below having accordingly decided, that the declaration was insufficient, the question is brought before us for revision, by a motion in error.

The contract on the part of the defendants, as stated in the declaration, is, that they were to manufacture certain materials into clocks, and make and finish them as fast as they could be made, by faithfully employing constantly ten workmen, exclusive of the defendants and certain others ; and would, in the first place, complete one hundred clocks ; then two hundred, at two successive times ; then three hundred at each successive time, until two thousand were completed. The defendants further agreed to deliver to the plaintiff one half of the first three hundred, and three fourths of the remainder.

It is apparent from the contract, that the clocks were to be made no faster than they could be, by the assistance of a specified number of workmen ; and that no clocks were to be delivered until one hundred were made.

Now, the breach assigned is, that the defendants neglected

and refused to perform their part of the contract, and never delivered any part of the clocks, although they were often demanded.

But there is no averment that a sufficient time had elapsed for making one hundred clocks, or that the defendants having made them, neglected or refused to deliver the one half, or that the defendants neglected to employ the stipulated number of workmen.

With respect to a demand, that could be of no avail, unless made after the clocks were finished, or the lapse of a reasonable time for making them. When the clocks were demanded does not appear. It might have been made before the clocks were completed.

It is, indeed, evident, that a long time had intervened between the making of the contract and the commencement of the suit. But we cannot, as a matter of law, say, that that time was sufficient for making the clocks. Upon this subject we can determine nothing, except by the aid of proper averments.

In a very recent case, where it was averred, in the declaration, that the defendant promised to render his account within a reasonable time, when thereunto afterwards requested, the declaration, upon demurrer, was adjudged bad, because there was no averment that a reasonable time had elapsed, or that a request had been made. *Canfield* v. *Merrick*, 11 *Conn. Rep.* 425.

It is further stated, that the defendants manufactured the materials into clocks, and parts of clocks, and clandestinely conveyed them away out of the state, and to places unknown. But how many clocks were made, is not stated. If the number did not amount to one hundred, then there was no obligation to deliver them. Had it been shewn, that the defendants had so disposed of the clocks or materials as to deprive themselves of the power of fulfilling their contract, the case might be different. But that does not appear.

Again it is stated, that the defendants conveyed away all their own property, secreted the stock and materials, which were to be manufactured into clocks, and defrauded the plaintiff.

However improper the conduct of the defendants may have been, yet if they have not broken their contract with

the plaintiff, they are not liable to him in the present suit. Now, there is no stipulation in that contract, that they would not convey away their own property, or that they would keep the materials to be made into clocks in any particular place. By the very terms of the contract, the materials were to be and remain in the possession of the defendants. They had a right to keep them where they pleased, provided they continued to manufacture them in the manner stipulated in the contract.

Upon the whole, therefore, we are all of opinion that the breach of the contract is not well assigned; and consequently, that there is no error in the judgment complained of.

This view of the subject renders it unnecessary to consider the other questions that have been presented, by the defendants' counsel.

In this opinion, the other Judges concurred.

Judgment affirmed.